## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST AIRLINES CO. PROFIT | § | |
| SHARING/401(K) COMMITTEE | § | |
| on behalf of the SOUTHWEST AIRLINES CO. | § | |
| PROFIT SHARING PLAN and the | § | |
| SOUTHWEST AIRLINES CO. 401(K) PLAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3-06CV-0747D |
| | § | |
| UBS GLOBAL ASSET MANAGEMENT | § | |
| (AMERICAS), INC., f/k/a BRINSON | § | |
| PARTNERS, INC. and UBS GLOBAL | § | |
| ASSET MANAGEMENT TRUST COMPANY | § | |
| f/k/a BRINSON TRUST COMPANY, | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
### MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)
### AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Motions to Dismiss Are Not Favored, and Defendants Have Wholly Failed to Demonstrate That No Relief Could Be Granted to Plaintiff Under Any Set of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   Plaintiff Has Sufficiently Pleaded a Claim for Breach of Fiduciary Duty Under ERISA Section 404(a)(1)(D) for Failure to Act in Accordance with Plan Documents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.   Plaintiff Has Sufficiently Pleaded a Claim for Breach of Fiduciary Duty Under ERISA Section 404(a)(1)(B) for Failure to Act Prudently. . . . . . . . . . . . . . . . . . 5

        1.   Prudence is an inherently factual inquiry inappropriate for dismissal on the pleadings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2.   Plaintiff <u>has</u> alleged that Defendants acted imprudently based on facts that existed at the time the challenged investments were made and is not relying solely on "hindsight" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3.   Defendants cite no authority for the proposition that Plaintiff must <u>plead</u> how Defendants acted imprudently in light of "modern portfolio theory" . . . . 8

    D.   Plaintiff Has Sufficiently Pleaded That Defendants' Breaches of Fiduciary Duty Caused a Loss to the Southwest Plans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    E.   Plaintiff Has Sufficiently Pleaded a Claim for Breach of Fiduciary Duty Under ERISA Sections 404(a)(1)(A) and 406 Related to Defendants' Conflicts of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1.   Defendants' argument that Plaintiffs' conflict-of-interest allegations "make no sense" must fail. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        2.   Defendants mischaracterize the prohibitions in ERISA section 406 . . . . 13

i

F.   Because Plaintiff Has Sufficiently Pleaded Claims for Breach of Fiduciary Duty Under ERISA, Plaintiff Has Sufficiently Pleaded a Claim for Co-Fiduciary Breach Under ERISA Section 405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.   PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# INDEX OF AUTHORITIES

## CASES

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Brandt v. Grounds*, 687 F.2d 895 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Chao v. Stuart*, No. Civ. H-04-1115, 2005 WL 1693939 (S.D. Tex. July 20, 2005) . . . . . . . . . 14

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) . . . . . . . . . . . . . . . 2, 5, 12

*Concha v. London*, 62 F.3d 1493 (9th Cir. 1995), *cert. dism'd*, 517 U.S. 1183 (1996) . . . . . . . . 3

*Conley v. Gibson*, 355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*, 720 F. Supp. 1342
(N.D. Ill. 1989), *aff'd*, 920 F.2d 457 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir. 1983),
*cert. denied*, 467 U.S. 1251 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Franks v. Prudential Health Care Plan, Inc.*, 164 F. Supp. 2d 865 (W.D. Tex. 2001) . . . . . . . . 2

*Harley v. Minnesota Mining & Mfg. Co.*, 42 F. Supp. 2d 898 (D. Minn. 1999) . . . . . . . . . . . . 6

*In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004) . . . . . . . . . . . . 3, 8, 9, 10

*In re General Motors ERISA Litig.*, No. 05-71085, 2006 WL 897444
(E.D. Mich. Apr. 6, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10

*In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812 (N.D. Cal. 2005) . . . . . . . . . . . 6

*Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921 (S.D. Tex. 2004),
*aff'd*, 129 Fed. Appx. 874 (5th Cir.), *cert. denied*, 126 S. Ct. 426 (2005) . . . . . . . . . . . . . . . 13

*Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.*,
173 F.3d 313 (5th Cir.), *cert. denied*, 528 U.S. 967 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*LNC Investments, Inc. v. First Fidelity Bank, N.A.*, No. 92 Civ. 7584 MBM,
1997 WL 528283 (S.D.N.Y. Aug. 27, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nelson v. Brinson Partners, Inc.*, No. 03 C 6446, 2004 WL 178180
(N.D. Ill. Jan. 16, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*McDonald v. Provident Indemnity Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995),
*cert. denied*, 516 U.S. 1174 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Movitz v. First Nat'l Bank of Chicago*, 148 F.3d 760 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . 10

*Silverman v. Mutual Benefit Life Ins. Co.*, 138 F.3d 98 (2d Cir. 1998) . . . . . . . . . . . . . . . . . 10

*Soo Line R.R. Co. v. St. Louis Southwestern Railway Co.*, 125 F.3d 481 (7th Cir. 1997) . . . . . . 13

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 10

*Willett v. Blue Cross & Blue Shield of Ala.*, 953 F.2d 1335 (11th Cir. 1992) . . . . . . . . . . . . . 10

## STATUTES AND RULES

29 U.S.C. § 1004(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 U.S.C. § 1104(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

29 U.S.C. § 1104(a)(1)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. § 1105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. § 1106(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

FED. R. CIV. P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Comes now Plaintiff Southwest Airlines Co. Profit Sharing/401(k) Committee ("Plaintiff" or the "Committee") and submits its Response to Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) ("Defendants' Motion to Dismiss") and Brief in Support and would respectfully show the Court as follows:

## I.
## SUMMARY OF ARGUMENT

Defendants pay no attention to the standards applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). They ignore the fact that Plaintiff need only provide "notice" of its claims through its pleading and need not *plead* every single fact that it will ultimately need to prove to succeed on its claims. Defendants seek to impose pleading requirements on Plaintiff's ERISA claims that simply do not exist, and they assert arguments that are more appropriately considered only after there has been an opportunity for discovery.

Defendants also ignore the specific allegations contained in Plaintiff's Original Complaint — allegations that must be taken as true for purposes of a motion to dismiss. Specifically, they ignore Plaintiff's allegations as to what "governing Plan documents" Defendants disregarded in violation of their fiduciary duties. They ignore Plaintiff's allegations about Defendants' lack of prudence. They mischaracterize Plaintiff's allegations about Defendants' conflicts of interest.

Plaintiff is bringing claims on behalf of the Southwest Airlines Co. Profit Sharing Plan and the Southwest Airlines Co. 401(k) Plan (collectively referred to herein as the "Southwest Plans"). These claims involve Defendants' numerous breaches of fiduciary duty with respect to these Plans. Defendants should not be allowed to cut Plaintiff (and the Southwest Plans) off before Plaintiff ever has any opportunity to conduct discovery as to Defendants' actions with respect to the Southwest

Plans. Motions to dismiss are not vehicles for precluding plaintiffs from determining exactly how and to what extent their rights have been violated, particularly by those that owe them fiduciary duties. Defendants' Motion to Dismiss should be denied.

## II.
## ARGUMENT AND AUTHORITIES

**A.    Motions to Dismiss Are Not Favored, and Defendants Have Wholly Failed to Demonstrate That No Relief Could Be Granted to Plaintiff Under Any Set of Facts.**

In their Motion to Dismiss, Defendants effectively ignore the standard on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). As the Supreme Court has stated, "a complaint should not be dismissed for failure to state a claim unless it appears *beyond doubt* that plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief."[1]  Moreover, complaints "must be *liberally construed* in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true."[2]  Accordingly, dismissal under Rule 12(b)(6) is "viewed with disfavor and is rarely granted."[3]

Motions to dismiss under Rule 12(b)(6) must also be considered in light of the "notice pleading" requirements of Federal Rule of Civil Procedure 8(a).[4]  "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim."[5]  Rather, a complaint must only include "a short and plaint statement of the claim showing that the

---

[1] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (emphasis added).

[2] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (emphasis added).

[3] *Id.*; *see also Franks v. Prudential Health Care Plan, Inc*, 164 F. Supp. 2d 865, 871 (W.D. Tex. 2001).

[4] *See, e.g., Conley*, 355 U.S. at 47.

[5] *Id.*

pleader is entitled to relief."[6]   "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."[7]

All of the arguments raised in Defendants' Motion to Dismiss either seek to require some sort of heightened pleading standard or are more appropriately summary judgment arguments asserted prematurely, or both.   However, there is no heightened pleading standard in ERISA cases.[8] Furthermore, the distinction between the 12(b)(6) motion to dismiss stage of a case and the summary judgment stage of the case is "crucial."[9]  Plaintiff has more than provided Defendants with sufficient "notice" of the claims being asserted against them, and Plaintiff is entitled to conduct discovery based on such allegations to support and further pursue such claims.[10]  The Federal Rules simply do not permit a defendant to cut off the process before a plaintiff has any opportunity to conduct discovery on properly asserted breach of fiduciary duty claims.[11]

---

[6]FED. R. CIV. P. 8(a)(2).

[7]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

[8]*See, e.g., Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995), *cert. dism'd*, 517 U.S. 1183 (1996); *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 867 (S.D. Tex. 2004).

[9]*See In re General Motors ERISA Litig.*, No. 05-71085, 2006 WL 897444, at *5 (E.D. Mich. Apr. 6, 2006).

[10]*See id.* at *10 ("Plaintiffs' burden is only to put Defendants on notice of a viable claim for relief, and they need not allege every specific fact that must be proven in furtherance of their claim.").

[11]"[T]he circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage.   Where a fiduciary exercises discretionary control over a plan, and assumes responsibilities that this control entails, the victim of his misconduct often will not, at the time he files his complaint, be in a position to describe with particularity the events constituting the alleged misconduct.   These facts will frequently be in the exclusive possession of the breaching fiduciary." *Concha*, 62 F.3d at 1503.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND BRIEF IN SUPPORT— Page 3**

**B.    Plaintiff Has Sufficiently Pleaded a Claim for Breach of Fiduciary Duty Under ERISA
Section 404(a)(1)(D) for Failure to Act in Accordance with Plan Documents.**

ERISA section 404(a)(1)(D) provides that an ERISA fiduciary "shall discharge his duties
with respect to a plan . . . in accordance with the documents and instruments governing the plan."[12]
Defendants maintain that Plaintiff has failed to assert a cause of action under this section of ERISA
because "the governing plan documents explicitly allowed" the investments about which Plaintiff
complains, "both in terms of the type of investments (loan participations and bonds) and credit
quality (A2/P2)."[13]  One of the problems with Defendants' argument is that Defendants refer to the
"IMA Investment Policy" as the only relevant "governing plan document."[14]

Plaintiff specifically alleges in its Original Complaint the existence of other "governing" plan
documents and that Defendants' actions in conjunction with the two Enron investments violated such
documents and the guidelines contained therein.  For example, in Paragraph 14, Plaintiff alleges:
"[T]he Brinson Trust Company Policy Manual, Policy No. 512C, required that 'LPCs [loan
participations] must have signed documentation approved by the legal staff of the Fund's advisor,'"
and that "Defendants did not follow this policy before purchasing and holding the Enron loan
participation."  Further, in Paragraph 12, Plaintiff alleges that the Enron bond purchase "violated the
Brinson Fund's restrictions on purchases of instruments with a maturity date in excess of ninety-one
days."[15]

---

[12]29 U.S.C. § 1104(a)(1)(D)

[13]Defendants' Motion to Dismiss at 6.

[14]*See id.* at 5.

[15]*See also* Original Complaint ¶ 10 ("Defendants' internal rules governing Brinson Fund investments were also
designed to exclude risky instruments, to ensure the investigation and documentation of the investigation of investment
decisions, and to require high-level internal approval prior to the making of any investment the risk attributes of which

Defendants offer no explanation as to why the "Policy Manual" and other "internal investments restrictions" that govern Brinson Fund investments are not "governing Plan documents."[16] Plaintiff alleges that they do qualify as such and that Defendants violated them, allegations that for the purpose of the Motion to Dismiss are taken to be true.[17] Accordingly, Plaintiff has stated a claim for breach of fiduciary duty under ERISA section 404(a)(1)(D), and Defendants' Motion to Dismiss should be Denied.

**C.     Plaintiff Has Sufficiently Pleaded a Claim for Breach of Fiduciary Duty Under ERISA Section 404(a)(1)(B) for Failure to Act Prudently.**

Defendants make two arguments in support of their claim that Plaintiff's have failed properly to allege a claim that they violated ERISA's duties of prudence. The first is that Plaintiff's claim rests solely, and improperly, on hindsight.[18] The second is that Plaintiff has failed to make allegations specifically with regard to Defendants' "broader investment strategy" in light of "modern portfolio theory."[19] Neither of these arguments provides a basis for dismissal under Rule 12(b)(6).

---

might possibly conflict with the Brinson Fund's objectives."); *id.* ¶ 15 ("Defendants also violated other internal investment restrictions, including those limiting the amount of Enron debt to 3% of the portfolio, those requiring that the Enron paper be sold when Defendants' internal credit rating plummeted, and those requiring committee approval.")

[16]*See, e g , DeBruyne v. Equitable Life Assurance Soc'y of the U.S* , 720 F. Supp. 1342, 1347 (N.D. Ill. 1989) (addressing the plaintiffs' claim that the fiduciaries' conduct did not comport with "prospectuses" concerning the Plan and finding that "defendants' management of the Fund's portfolio fully complied with the reports and prospectuses that plaintiffs characterize as plan documents"), *aff'd*, 920 F.2d 457 (7th Cir. 1990)

In fact, Defendants do not even address these specific references in the Original Complaint, but simply characterize Plaintiff's allegations as being only "conclusory allegations" that the investments "were 'not consistent with the [Cash Management Fund's] objectives." *See* Defendants' Motion to Dismiss at 6. Clearly, Plaintiff has provided more than vague references to violated "objectives" by identifying the more specific violations as described above.

[17]*See, e g , Collins*, 224 F.3d at 498.

[18]*See* Defendants' Motion to Dismiss at 7-9.

[19]*See id.* at 9-10.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND BRIEF IN SUPPORT— Page 5**

*1.      Prudence is an inherently factual inquiry inappropriate for dismissal on the pleadings.* — Section 404(a)(1)(B) of ERISA requires that Plan fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[20]  In looking at the "prudent man" rule, courts are to review "the fiduciary's independent investigation of the merits of a particular investment," and the "adequacy of a fiduciary's investigation is to be evaluated in light of the 'character and aims' of the particular type of plan he serves."[21] Thus, any evaluation of an ERISA fiduciary's prudence will involve a myriad of factors. As all of the factors will necessarily be fact-intensive, the issue of prudence is inherently a question of fact and, thus, one that should not be resolved on a motion to dismiss before a plaintiff has even had the opportunity to conduct any discovery.[22]

*2.      Plaintiff has alleged that Defendants acted imprudently based on facts that existed at the time the challenged investments were made and is not relying solely on "hindsight."* — Defendants ignore the factual nature of any prudence determination as well as the numerous factors that must necessarily be considered with respect to any such determination. They simply make the factual "conclusion" that because "the market" was purportedly "unaware of Enron's weakness at

---

[20]29 U.S.C. § 1104(a)(1)(B).

[21]*See Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251 (1984). In this case, Plaintiff has alleged that the "aim" of the portions of the Southwest Plans managed by Defendants was to seek *safety of principal*, and it is with this aim in mind that the prudence of Defendants' actions must be judged. *See* Original Complaint ¶ 10.

[22]*See In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 841 (N.D. Cal. 2005) (recognizing that a fiduciary's argument that it acted "reasonably" is "better suited for resolution at summary judgment or trial practice, not a motion to dismiss"); *cf. Harley v. Minnesota Mining & Mfg. Co.*, 42 F. Supp. 2d 898, 907 (D. Minn. 1999) ("Typically, whether a fiduciary acted prudently — or in other words as reasonably prudent fiduciary — is a question of fact.").

the time the investments were made," they could not have been imprudent in failing to heed the many different "warnings" identified by Plaintiff in the Original Complaint.[23] Defendants' unsupported factual assertion will be shown to have no merit, but in any event cannot support a dismissal under Rule 12(b)(6).[24]

How "the market" viewed Enron at the time Defendants made the challenged investments can certainly be *a factor* that can be considered as part of any prudence analysis. However, "the market" is not a fiduciary, and has no duty of prudence with which it must comply. Moreover, the Supreme Court has stated that "[a]ny approach that designates a single fact or occurrence as always determinative of an inherently fact-specific finding . . . must necessarily be overinclusive or underinclusive."[25] Thus, Defendants' approach of considering only how "the market" viewed the Enron investments at the time they were made must be rejected.

Moreover, Plaintiff's Original Complaint specifically identifies that *at the time the Enron investments were made* there were warnings that a prudent fiduciary would have heeded.[26] Plaintiff further alleges that: "[t]he Enron investments that ultimately defaulted were placed in the Brinson Fund without proper and prudent credit analysis"[27] and "Defendants performed no investigation as

---

[23]*See* Defendants' Motion to Dismiss at 8-9.

[24]Defendants made this same "hindsight" argument in another case involving its management of the Brinson Fund, and the district court rejected the argument as premature "because the present lawsuit has not yet reached the summary judgment stage." *Nelson v. Brinson Partners, Inc*, No. 03 C 6446, 2004 WL 178180, at *4 (N.D. Ill. Jan. 16, 2004) (denying Defendants' motion to dismiss under Rule 12(b)(6)). Notably, one of the primary cases upon which Defendants rely — *DeBruyne v. Equitable Life Assurance Soc'y of the US* — was, as the court in *Nelson* pointed out, a cased decided *on summary judgment. Nelson*, No. 03 C 6446, 2004 WL 178180, at *4; *see* Defendants' Motion to Dismiss at 7 (relying upon *DeBruyne*).

[25]*Basic Inc. v. Levinson*, 485 U.S. 224, 236 (1988) (addressing the issue of materiality in the context of securities fraud claims and rejecting a bright-line rule that would establish when merger discussions become material).

[26]*See* Original Complaint ¶ 17.

[27]*Id.* ¶ 11.

to the merits and risks of the Enron investments prior to using the assets of the Southwest Plans to make such investments."[28]  Moreover, Plaintiff has alleged that Defendants *were aware* of the "red flags," and that they had *heeded them with respect to their own investments in Enron.*[29]

> For example, while Enron was collapsing throughout 2001, Defendants reduced their own Enron exposure by approximately $400 million. Indeed, approximately 30 days before Defendants purchased the Enron investments for the Brinson Fund, they began to characterize Enron as a "MELTDOWN" situation, put a "redlight" on Defendants' own Enron lending, and threatened to terminate their "Master Agreement" with Enron due to its financial condition. *While Defendants heeded the red flags that existed prior to October 3, 2001 with respect to the investment of their own money, they ignored them with respect to the Brinson Fund and instead purchased risky Enron debt.*[30]

There is simply no basis for suggesting, based on the specific facts alleged in the Original Complaint, that "it appears *beyond doubt* that [P]laintiff can prove *no set of facts* in support of [its] claim" that Defendants breached their fiduciary duty of prudence when they purchased the two Enron investments at issue.[31]  Defendants' Motion to Dismiss must be denied.

   *3.*      ***Defendants cite no authority for the proposition that Plaintiff must plead how Defendants acted imprudently in light of "modern portfolio theory."*** — Defendants also claim that any prudence determination must "recogniz[e] the role of [the challenged] investments in the Fund's broader investment strategy."[32]  Then, they assert that because Plaintiff has failed to allege facts with

---

[28]*Id.* ¶ 12.

[29]*See id.* ¶ 11 (" Brinson Partners's credit analyst had doubts about Enron's credit worthiness "); *id.* ¶ 17.

[30]*Id.* ¶ 19 (emphasis added).

[31]*See Conley*, 355 U.S. at 45-46; *see also In re Dynegy, Inc ERISA Litig* , 309 F. Supp. 2d at 866 ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims ").

[32]Defendants' Motion to Dismiss at 10.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND BRIEF IN SUPPORT— Page 8**

regard to this broader investment strategy, they are entitled to dismissal under Rule 12(b)(6).[33] However, Defendants cannot and do not offer any authority whatsoever that would require an ERISA plaintiff to *plead* facts related to how a particular challenged investment is or is not prudent in light of "modern portfolio theory." The only case Defendants cite with regard to a "modern portfolio theory" analysis is a case that was decided by the court after a *bench trial*.[34] Thus, the plaintiff was given the opportunity to develop its allegations, conduct discovery, and attempt to present *evidence* to the court that there had been a violation "of a fiduciary duty required by the prudent investor and modern portfolio standards of ERISA."[35] Defendants seek to deny Plaintiff a similar opportunity.

As the Supreme Court held in *Swierkiewicz*, a plaintiff is not required to allege facts that support every element of a prima facie case.[36] This is true in the ERISA context as well.[37] Similarly, Plaintiff does not have to allege facts that will address every potential factor that will be examined under a prudence analysis. To require otherwise would be an utter abandonment of the liberal pleading requirements of Rule 8(a).[38] Instead, Plaintiff must be given the opportunity to develop prudence-related factors through discovery, and Defendants will be free to seek summary judgment if they believe they can establish prudence as a matter of law based on "modern portfolio theory"

---

[33]*Id.*

[34]*See Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.*, 173 F.3d 313, 315 (5th Cir.), *cert. denied*, 528 U.S. 967 (1999).

[35]*See id.* at 322.

[36]*Swierkiewicz*, 534 U.S. at 511.

[37]*See In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d at 881-82.

[38]*See supra* notes 4-7 and surrounding text.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND BRIEF IN SUPPORT— Page 9**

once discovery has been completed.[39]   Until then, Defendants' argument is premature and unfounded, and their Motion to Dismiss should be denied.

### D.   Plaintiff Has Sufficiently Pleaded That Defendants' Breaches of Fiduciary Duty Caused a Loss to the Southwest Plans.

Defendants again seek to place a pleading burden on Plaintiff that does not exist with their "loss causation" argument.[40] "Loss causation" can arise as an issue for proof as to Plaintiff's breach of fiduciary duty claims, but that does not mean that Plaintiff must *allege* facts at this early stage of the litigation that would fully explain how Defendants' breaches caused the loss to the Southwest Plans.[41] Defendants offer no authority to the contrary.[42]

---

[39]*See In re General Motors ERISA Litig*, No. 05-71085, 2006 WL 897444, at *13 ("Whether Plaintiffs can provide proof of their allegations is an issue for another day, *after* discovery has developed a factual record.") (emphasis added).

[40]*See* Defendants' Motion to Dismiss at 11-13.

[41]*See Swierkiewicz*, 534 U.S. at 511 (rejecting the notion that a plaintiff must *plead* facts to support every single element of a prima facie case).

At trial, once Plaintiff has established a prima facie case of loss to the Southwest Plans, the "burden of persuasion [will] shift[] to the [Defendants] to prove that the loss was not caused by [their] breach of duty." *McDonald v. Provident Indemnity Life Ins. Co*, 60 F.3d 234, 237 (5th Cir. 1995), *cert. denied*, 516 U.S. 1174 (1996); *see also In re Dynegy, Inc ERISA Litig*, 309 F. Supp. 2d at 872. In light of the ultimate burden that will lie with Defendants, it makes even less sense to suggest dismissal before Plaintiff has had any opportunity to conduct discovery.

[42]The cases cited by Defendants do not address any pleading requirement that would require dismissal of Plaintiff's claims. *Silverman v. Mutual Benefit Life Ins. Co.* and *Willett v. Blue Cross & Blue Shield of Ala.* were cases decided on *summary judgment. See Silverman*, 138 F.3d 98, 100 (2d Cir. 1998); *Willett*, 953 F.2d 1335, 1338 (11th Cir. 1992). *Movitz v. First Nat'l Bank of Chicago* involved reversal of a jury verdict. *See Movitz*, 148 F.3d 760, 761 (7th Cir. 1998). Of the cases upon which Defendants rely for their causation argument, only *Brandt v. Grounds* involved a motion to dismiss. *See Brandt*, 687 F.2d 895, 895-96 (7th Cir. 1982). However, in *Brandt*, the issue was the plaintiff's failure to allege any harm was caused by an act taken by the defendant in its fiduciary capacity. *Id* at 897. The defendant bank was a fiduciary only to the extent it provided investment advice, but the harm alleged resulted from the defendant's allowing the withdrawal of Plan funds by an embezzling trustee, and it had nothing to do with any investment advice provided by the defendant. *Id* at 898. Because the act of which the plaintiff complained was *not a fiduciary act*, the harm alleged *could not have resulted* from any fiduciary breach by the defendant, and dismissal was appropriate. *Id* There is no such causal disconnect in this case. The breaches alleged by Plaintiff relate to Defendants' investment decisions, and the Southwest Plans were harmed by the improper investments.

Furthermore, Defendants' argument that the only "cause" of the loss to the Southwest Plans is "Enron's massive fraud" is equally unavailing.[43] Even assuming Defendants' factual assertion that Enron's total collapse due to fraud was an "unanticipated event," it would not absolve Defendants' of their responsibility for safeguarding the assets of the Southwest Plans.[44] Defendants had a duty to act as reasonably prudent fiduciaries to protect the assets of the Southwest Plans from imprudent investments, under all applicable facts and circumstances, including, without limitation, the specific guidelines and restrictions in place to protect the Plans from risk (for example, the limit placed on the Brinson Fund to limit its total investment in any one issuer to 3% of the Fund's assets[45]). The "risk" at issue is that an investment will turn out to be a bad one, and the guidelines and restrictions in place were designed as a protection against this very risk. It does not matter that the guidelines were not designed specifically to detect "massive fraud" or that the specific reason the investment turned out to be "bad" was unexpected (like Enron's fraud).[46] In any event, what is "foreseeable" is clearly a fact issue that deserves development through discovery before Defendants can be allowed to escape liability for their failure to safeguard the interests of the ERISA Plans with which they had been entrusted. Defendants' Motion to Dismiss should be denied.

---

[43]*See* Defendants' Motion to Dismiss at 12.

[44]*See LNC Investments, Inc. v. First Fidelity Bank, N.A.*, No. 92 Civ. 7584 MBM, 1997 WL 528283, at *31 (S.D.N.Y. Aug. 27, 1997).

[45]*See* Original Complaint ¶ 15.

[46]*LNC Investments*, No. 92 Civ. 7584 MBM, 1997 WL 528283, at *30 (quoting the RESTATEMENT (SECOND) OF TORTS § 442B cmt. b)

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND BRIEF IN SUPPORT— Page 11**

**E.    Plaintiff Has Sufficiently Pleaded a Claim for Breach of Fiduciary Duty Under ERISA Sections 404(a)(1)(A) and 406 Related to Defendants' Conflicts of Interest.**

*1.    Defendants' argument that Plaintiffs' conflict-of-interest allegations "make no*

*sense" must fail.* — ERISA section 404(a)(1) provides that plan fiduciaries "shall discharge [their]

duties with respect to a plan solely in the interest of the participants and beneficiaries."[47]  In other

words, ERISA fiduciaries cannot place their own interests ahead of what is best for the Plan.

Plaintiff has alleged that Defendants did precisely what they were not allowed to do with respect to

the challenged Enron investments:

> Defendants were seeking during the relevant time period to become a "Tier-1
> Bank" to Enron at the urging of Andy Fastow. The reason Defendants wanted
> to become a "Tier-1 Bank" was because Enron would only "do business"
> with those who extended it credit. The business Defendants wanted to "do"
> with Enron was projected at between $10 and $50 million in investment
> banking fees per year.  It is not a coincidence, and is fair to conclude, that
> *Defendants "bent" (or disregarded) their own internal rules for handling of*
> *the Brinson Fund to find ways to support Enron.* For example, the so-called
> independent analysts who were responsible for deciding whether to invest in
> Enron or extend credit to it, had their compensation linked to the profitability
> of the Defendants, which was impacted by the Enron business relationship.[48]

Defendants' response to these allegations is to claim that they do not make sense.[49]  They

point to the fact that the Complaint alleges that Defendants *reduced* their own Enron holdings, and

they question how Plaintiff "seriously contend[s] that defendants hoped to curry favor with Enron"

while reducing their own investments in Enron.[50]  Actually, Plaintiff's allegations are not

---

[47]29 U.S.C. § 1104(a)(1).

[48]Original Complaint ¶ 18 (emphasis added).  Again, for purposes of a motion to dismiss, Plaintiff's allegations are presumed to be true.  *See Collins*, 224 F.3d at 498.

[49]*See* Defendants' Motion to Dismiss at 14.  Defendants also suggest that *they*, in fact, had no interest in currying favor with Enron.  *See* Motion to Dismiss at 14.  However, this claim is not to be resolved at the motion to dismiss stage of the case, when Plaintiff's allegations are presumed to be true.  *See Collins*, 224 F.3d at 498.

[50]*Id*

inconsistent.[51] It could be argued that Defendants wanted to "curry favor" with Enron, but were not willing to do so when their own assets were involved. However, when they were investing *other people's money*, they were willing to use others' funds to try to win favor with Enron. Moreover, Defendants' strategy for trying to curry favor with Enron need not have been a good one or likely to succeed in winning Enron's favor to make the use by the Defendants of the Southwest Plans' funds as part of this strategy a breach of fiduciary duty. It is Defendants' *motivation* that violates the conflict-of-interest prohibition in ERISA, not whether Defendants ultimately were (or were likely to be) successful in getting the benefit they were trying to get for themselves by using Plan funds.[52]

 2.  *Defendants mischaracterize the prohibitions in ERISA section 406.* — ERISA section 406 sets forth certain transactions that are strictly prohibited under ERISA.[53] Such transactions fall into two different categories. Plaintiff does not claim that Defendants entered into a transaction with a "party in interest" prohibited by ERISA section 406(a). What Plaintiff claims is that Defendants improperly "deal[t] with the assets of the [Southwest Plans] in [their] own interest or for [their] own account."[54] As described above, Defendants wanted to "get in good" with Enron,

---

[51]The cases cited by Defendants offer significantly different examples of pleading "inconsistency." *See Soo Line R R Co. v. St Louis Southwestern Railway Co.*, 125 F 3d 481, 483 (7th Cir. 1997) (finding the plaintiff had judicially admitted that it did "provide services" to the defendant such that the plaintiff could not then argue that the statute of limitations related to seeking recovery of charges for "services" was inapplicable to its claims); *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 930 (S D. Tex. 2004) ("Keane's *admitted* lack of actual use belies his allegations that he created extensive goodwill and public recognition in 'American Idol,' thereby derailing his unfair competition claims.") (internal quotation marks omitted and emphasis added), *aff'd*, 129 Fed. Appx. 874 (5th Cir.), *cert. denied*, 126 S Ct. 426 (2005); *see also id.* at 941 ("Keane's additional factual assertion that he advertised his 'American Idol' concept on the Internet entirely eviscerates his ability to characterize that concept as a trade secret or as an idea that was conveyed in confidence to a select group.")

[52]*See Nelson*, No. 03 C 6446, 2004 WL 178180, at *3 ("By alleging Brinson's *desire* to support Enron at a time when other investors were losing confidence in the energy trading firm, [Nelson] has advanced enough requisite facts to support an allegation that Brinson breached its fiduciary duty of loyalty.") (emphasis added).

[53]29 U.S.C. § 1106.

[54]29 U.S.C. § 1106(b)(1).

and they used the assets of the Southwest Plans to try and do so.  Contrary to Defendants' argument,

such conduct *is* prohibited by ERISA section 406(b)(1).[55]  The "plain language" interpretation of this

section does not support limiting its application to situations in which an ERISA Plan fiduciary

directly receives Plan assets.[56]  Plaintiff alleges that Defendants used the assets of the Southwest

Plans to get something for themselves and/or to serve their own selfish interests.  As these

allegations must be taken as true, Plaintiff has clearly stated a claim under ERISA section 406(b)(1),

and there is no basis for dismissing Plaintiff's claim.

**F.    Because Plaintiff Has Sufficiently Pleaded Claims for Breach of Fiduciary Duty Under ERISA, Plaintiff Has Sufficiently Pleaded a Claim for Co-Fiduciary Breach Under ERISA Section 405.**

ERISA section 405 provides for holding fiduciaries liable for breaches of fiduciary duty by

their co-fiduciaries.[57] Defendants' only argument for dismissal of Plaintiff's section 405 claim is the

purported failure by Plaintiff to "state a primary claim against either defendant."[58]  As set forth

above, Plaintiff *has* stated "primary" claims for breach of fiduciary duty against Defendants.

Accordingly, Defendants' request for dismissal of the "secondary liability" co-fiduciary breach claim

must be denied.

---

[55]*See* Defendants' Motion to Dismiss at 16.  Just because Defendants can cite cases in which section 406(b)(1) was raised in conjunction with "direct" use of Plan assets by an ERISA fiduciary does not mean that the section only applies in such situations, and the cases cited by Defendants do not so state.

[56]*See Chao v. Stuart*, No. Civ. H-04-1115, 2005 WL 1693939, at *6 (S.D. Tex. July 20, 2005) ("ERISA requires that a fiduciary 'not deal with the assets of the plan in his own interest.'  This statute clearly prohibits a fiduciary from using or dealing with plan assets for his own benefit.") (internal citation omitted).

[57]29 U.S.C. § 1105(a).

[58]*See* Defendants' Motion to Dismiss at 17.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS**
**UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND BRIEF IN SUPPORT— Page 14**

## III.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiff asks that the Court deny

Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6), or, at the very least,

give Plaintiff the opportunity to replead if the Court deems any of Plaintiff's pleadings to be

insufficient, as well as for such other and further relief to which Plaintiff may show itself to be justly

entitled.

Respectfully submitted,

By:＿＿＿/s/ Edward P. Perrin, Jr.＿＿＿＿＿＿
Edward P. Perrin, Jr.
Attorney-In-Charge
State Bar No. 15796700
Jennifer R. Poe
State Bar No. 00794470
Hallett & Perrin, P.C.
2001 Bryan Street, Suite 3900
Dallas, Texas 75201
214-953-0053
214-922-4141
eperrin@hallettperrin.com

**ATTORNEYS FOR SOUTHWEST AIRLINES
CO. PROFIT SHARING/401(k) COMMITTEE**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of November, 2006 the foregoing response was served on all counsel of record as indicated below:

**VIA ECF, ELECTRONIC MAIL, and**
**U.S. MAIL**
Sharon A. Israel
MAYER, BROWN, ROWE & MAW, LLP
700 Louisiana Street, Suite 3400
Houston, TX   77002-2730

**VIA ECF, ELECTRONIC MAIL, and**
**U.S. MAIL**
Vincent J. Connelly
Jennifer R. Radstad
James V. Hart
MAYER, BROWN, ROWE & MAW, LLP
71 South Wacker Drive
Chicago, IL   60606-4637

_/s/ Edward P. Perrin, Jr._____
Edward P. Perrin, Jr.
